# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| **MARIA ANTONIA CILANO** | Civil Case: |
| *On behalf of herself individually and on behalf of two classes and one subclass of similarly situated persons.* | 19-827 |
| *and* | |
| **FELICIA DETRICE WIGGINS** | |
| *On behalf of herself individually and on behalf of a sub-class of similarly situated persons.* | *Jury Trial Demand* |
| Plaintiffs | |
| *v.* | |
| **BARBARA Q. SHEA** (d/b/a Shea Management, Inc., a fictitious entity) | |
| *and* | |
| **GRAND BEL MANOR CONDOMINIUM** | |
| Defendants | |

## CLASS ACTION COMPLAINT

Plaintiffs Maria Antonia Cilano ("**Cilano**") and Felicia Detrice Wiggins ("**Wiggins**"), each on her individual behalf and on behalf of one or more classes of similarly situated individuals defined *infra*.; by their attorneys Phillip R. Robinson and the Consumer Law Center LLC and pursuant to Fed.R.Civ.P. 23 (Class Actions); sues Barbara Q. Shea (d/b/a Shea Management, Inc., a fictitious entity) ("**Shea**"), and Grand Bel Manor Condominium ("**Grand Bel**"). The Plaintiffs,

on behalf of themselves and the classes defined *infra*., demand a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of their Class Action Complaint, state:

## INTRODUCTION

1.     This litigation seeks a declaratory judgment on various issues, including a declaration that certain Maryland enacted legislation (*i.e.*, CONDOMINIUMS—SUSPENSION OF USE OF COMMON ELEMENTS, 2018 Maryland Laws Ch. 345 (H.B. 575) is unconstitutional as it violates both the United States Constitution and the Maryland Constitution; injunctive relief, both immediate and permanent; money damages on behalf of the Plaintiffs; attorney fees on behalf of the Class Members; and the recovery of money damages from the Defendants for their unjust enrichment from their illegal conduct.

2.     Additionally, without regard to the legality of 2018 Md. Laws, chap. 345, this litigation also seeks a declaration of law that Grand Bel failed to comply with the requirements of the Maryland Condominium Act and Grand Bel's governing documents when it conducted its vote to adopt its "Amendment to the Declaration Establishing a Plan for Condominium Ownership of Premises Located in the City of Silver Spring, Montgomery County, Maryland Pursuant to the Condominium Act of the State of Maryland" ("**Grand Bel Declaration Amendment**"), recorded in the land records of Montgomery County on 17 January 2019 at book 57117 beginning at page 304.

3.     The Plaintiffs are current (*i.e.*, Ms. Cilano) and former (*i.e.*, Ms. Wiggins) condominium unit owners during the class periods.  Each of the potential class members are current or former condominium unit owners during the class periods.  Each of the Plaintiffs and potential class members were the victims of Defendant Barbara Shea's illegal consumer debt collection efforts.  Additionally, this litigation seeks damages incurred by the Plaintiffs and class members

from each of the Plaintiffs' and class members' condominiums and homeowners' associations represented by Ms. Shea pursuant to the doctrine of respondeat superior and *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md.App. 663 (21 December 2017, *recon. denied* 29 January 2019). Defendant Barbara Q. Shea is the property manager for and agent of Grand Bel and Stonegate. Although Ms. Shea represents her business to the Plaintiffs, all potential class members, and the general public as "Shea Management, Inc.", Shea Management, Inc. does not exist having been forfeited by the State of Maryland.

4.      Defendants Grand Bel and Stonegate are each an unincorporated condominium pursuant to the Maryland Condominium Act ("**MCA**"), MD. ANN. CODE,[1] REAL PROP. §§ 11-101, *et seq*.  Ms. Cilano owns a condominium within Grand Bel.  Ms. Wiggins owned a condominium unit within Stonegate until 3 April 2018.

5.      Prior to 1 October 2018, Maryland law was clear that no condominium created before 1 October 2018 had the legal right to limit, abrogate, or rescind a condominium unit owner's property rights unless such a right was specifically allowed by the condominium's declaration. More on point, Maryland courts have repeatedly held that no amendment of a declaration that changed unit owners' property rights or percentage interest in the condominium, once the first condominium unit had been sold, could be approved by less than 100% of all unit owners and mortgagees; every unit owner and mortgagee.  *See e.g. Elvaton Towne Condo. Regime II, Inc. v. Rose*, 162 A.3d 1027 (2017); *Ridgely Condo. Ass'n, Inc. v. Smyrnioudis*, 681 A.2d 494 (1996).

6.      As of 1 October 2018, Maryland statutes were changed to purportedly allow a condominium to "suspend" a condominium owner's vested property rights in order to collect

---

[1] All references to statues in this Complaint are to Maryland statutes unless otherwise noted.  The Plaintiffs will omit "MD. ANN. CODE" from all future Maryland code citations unless needed for clarity.

consumer debt alleged to be owed to a condominium delinquent for "more than 60 days." 2018 Md. Laws, chap. 345. Additionally, if a condominium's declaration did not authorize such "suspension", the changes enacted in 2018 Md. Laws, chap. 345 to the MCA allowed a condominium to amend its declaration to allow the "suspension" of an owner's property rights by the "affirmative vote of at least 60% of the total eligible voters of the condominium under the voting procedures contained in the declaration or the bylaws." 2018 Md. Laws, chap. 345. Some condominiums, including Grand Bel, have incorrectly interpreted the legislation to allow a change to a declaration that adversely affects a unit owner's vested property rights and/or ownership percentage interest to be allowed by a vote of 60% of eligible voters *who attend a meeting* held to amend the declaration regardless of whether the affirmative votes actually represented 60% of unit owners.

7. However, enacted Maryland legislation may not retroactively affect vested property rights and 2018 Md. Laws, chap. 345 cannot be applied constitutionally to take away the rights of property owners which existed prior to the act's effected date and may only apply prospectively to new condominium regimes or, in the alternative, to new owners who purchase into condominium regimes like Grand Bel after the legislation's effective date. *See e.g. Muskin v. State Dep't of Assessments & Taxation*, 30 A.3d 962, 971 (2011).

8. Despite a previous class action against Shea — successfully settled on behalf of the Plaintiffs in that case —Shea continues, both prior to and after 1 October 2018, to collect on behalf of others without a license as a Maryland Collection Agency and also by asserting a non-existent right under Maryland law to abrogate or limit condominium owners' property rights as a means of consumer debt collection.

9. Having settled the previous class action, Shea and Grand Bel have now sought to continue the same conduct by creating and recording in the land records an Amendment of the

Grand Bel Declaration that is violative of the United States Constitution, the Maryland Constitution, and multiple decisions of the Maryland Appellate Courts. Additionally, both Defendants have repeatedly demanded sums not lawfully due from the Plaintiffs and potential Class Members through unconscionable methods and by their use of flawed accounting methods and collection tactics, including threatened and actual litigation that, *at best*, purposefully violate Maryland statutes and Rules.

10.    This action seeks:

10.1.    an immediate and, eventually, permanent injunction that precludes the Defendants from further illegal interference in the Plaintiffs' and the Grand Bel Class Members' vested property rights as a means to attempt to collect alleged consumer debts allegedly owed by the Plaintiffs and/or other Grand Bel Class Members;

10.2.    an immediate and, eventually, permanent injunction that precludes the Defendants from further illegal acts and conduct in accounting for and collection of consumer debts alleged to be owed by the Plaintiffs, other Shea Class Members, and other Grand Bel Class Members;

10.3.    an immediate temporary restraining order and, eventually, permanent injunction that precludes Shea from acting directly or indirectly as a collection agency in the State of Maryland without the mandatory license required by the Maryland Collection Agency Licensing Act ("**MCALA**"), Bus. Reg. §§ 7-101, *et seq*. and more specifically, § 7-401(a), the violation of which is a criminal act (§ 7-401(b)).

11.    Finally, the Plaintiffs allege, pursuant to the Defendants' violations of certain remedial consumer protection statutes, that they, the Shea Class Members, and the Grand Bel Class Members are entitled to a judgement of liability against each Defendant for the damages that have

been incurred by the Defendants' illegal debt collection acts against the Plaintiffs, the Shea Class Members, and the Grand Bel Class Members. Both Grand Bel and Stonegate are liable for the conduct of Shea pursuant to *Mills v. Galyn Manor Homeowner's Ass'n., Inc*., 239 Md.App. 663 (2018).

12. Integral to some of the Plaintiff Cilano's and Class Members' claims, they also seek a declaration as to whether Maryland legislation enacted on 24 April 2018 and effective as of 1 October 2018, *i.e.,* 2018 Md. Laws, chap. 345 (HB 575) (attached as **Plaintiffs' Exhibit 1**) is unconstitutional under both the United States Constitution and the Maryland Constitution. Alternatively, Plaintiff Cilano and some Class Members' claims seek declaration of law that 2018 Maryland Laws Ch. 345 (H.B. 575) applies only to new condominium regimes created after the law's effective date or to owners who purchase a unit in a condominium after the law's effective date.

13. Additionally, the Plaintiff Cilano asserts that the Grand Bel Declaration Amendment was not properly presented to the Grand Bel unit owners and the vote to adopt the Grand Bel Declaration Amendment was not conducted as required by the Maryland Condominium Act and/or the Grand Bel governing documents.

14. In this action, the Plaintiffs seek their individual damages and losses which were caused by the Defendants.

15. In this action, the Plaintiffs seek FDCPA statutory damages of $1,000.00 for themselves and each member of the Shea Sub-Class as defined *infra*.

16. On behalf of the Shea Class Members and the Grand Bel Class Members, the Plaintiffs also seek partial redress on a class-wide basis to preclude the Defendants from their continuing unlawful conduct and to determine the Defendants' liability for the statutory claims asserted. The

Shea Class Members and the Grand Bel Class Members would then decide on their own if they wished to pursue their individual, actual damages or losses in individual actions.

JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since certain of the claims asserted herein arise under the laws of the United States.  Further, the Court may elect to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1369 since those claims are so related to the Federal claims that they form part of the same case and controversies.

18.     The Court has declaratory judgment authority pursuant to 28 U.S.C. § 2201, Fed.R.Civ.P. 57, and CTS & JUD. PROC. § 3-409.

19.     Venue is proper in this Court as the acts and conduct alleged all occurred in Maryland.

PARTIES

20.     Plaintiff Maria Antonia Cilano ("**Cilano**") is a natural person who owns and resides at 3834 Bel Pre Road, Unit 5, Silver Spring, Montgomery County, Maryland 20906 ("**Cilano Property**").

21.     Plaintiff Felica Detrice Wiggins ("Wiggins") is a natural person who, until 30 March 2018, owned and resided at 3926 Stone Gate Drive, Unit 3926C, Suitland, Prince George's County, Maryland 20746 ("**Wiggins Property**").

22.     Ms. Cilano and Ms. Wiggins may also be referred hereinafter as the "**Plaintiffs**" or the "**Named Plaintiffs**".

23.     Defendant Barbara Q. Shea ("**Shea**") is a natural person who, upon information and belief, resides at 5403 Surrey Street, Chevy Chase, Montgomery County, Maryland 20815.  Additionally, Shea conducts business — deceptively represented as "Shea Management, Inc." — from

7

a business address of 6917 Arlington Road, Suite 350, Bethesda, Montgomery County, Maryland 20814.

24.    Not currently named as party to this action, Stonegate, A Condominium ("**Stonegate**") is an unincorporated Maryland condominium, as that term is defined at REAL PROP., § 11-101(e), and is situated in Prince George's County, Maryland.

## FACTUAL ALLEGATIONS

### FACTUAL ALLEGATIONS RELEVANT TO INDIVIDUAL PLAINTIFFS

*(Factual Allegations Relevant to Ms. Cilano)*

25.    Ms. Cilano is an 82 year-old widow with numerous medical issues identified by her licensed physician(s) who lives on a fixed income.  Ms. Cilano was not a member of the *Martinez* class.

26.    Ms. Cilano purchased real property known as 3834 Bel Pre Road, Unit 5, Silver Spring, Montgomery County, Maryland 20906 ("**Cilano Property**") on 29 December 1994.

27.    The Cilano Property is situated within Grand Bel.

28.    In addition to her Unit, Ms. Cilano also purchased parking space 114 assigned to the Cilano Property by the Grand Bel Declaration and her Deed.

29.    Ms. Cilano purchased the Cilano Property for her personal use as her residence.

30.    The purchase of the Cilano Property was a consumer transaction.

31.    Ms. Cilano has lived at the Cilano Property from 29 December 1994 through the date of this Complaint.

32.    From 29 December 1994 through 7 December 2018, Ms. Cilano timely paid her assessments and all other charges due Grand Bel.

33.    Since 7 December 2018, Ms. Cilano has continued to timely pay her assessments and other changes other than the fines first asserted against Ms. Cilano on 7 December 2018.

34.    In 2017, a dispute arose between Shea and Ms. Cilano as to certain conduct of Ms. Cilano that were allegedly violations of the Grand Bel governing documents (*e.g.*, she fed old bread to wild birds on her balcony).

35.    Ms. Cilano disputed that feeding wild birds on her balcony was a violation of the Grand Bel governing documents and this issue developed into a feud between Ms. Cilano on one hand and Shea and members of the Grand Bel Board on the other hand.

36.    This feud developed into a continuing harassment of Ms. Cilano by Shea and certain Board Members that included illegal entry into the Cilano Property without Ms. Cilano's knowledge or consent, Board members arriving at the Cilano Property unwelcome and insistent on entry into the Cilano Property to hold an unannounced hearing, and other such petty acts.

37.    In April 2018, Grand Bel, by and through Shea, alleged that Ms. Cilano was using a window air conditioner that was allegedly not allowed by the Grand Bel governing documents.

38.    Ms. Cilano disputed the allegations, pointed out that the object that Shea complained about was merely the small intake of an indoor air conditioner and purification unit that was entirely within her bedroom (*i.e.*, not on the outside of her Unit nor visible outside of her Unit) and was prescribed by her personal physician due to her various medical conditions.

39.    When the dispute did not immediately end, Ms. Cilano provided a letter from her physician (dated 12 April 2018) that confirmed Ms. Cilano's need for the portable air conditioning unit for her health and disabilities.

40.    Rather than accept the doctor's letter, Shea, on behalf of Grand Bel, contacted Ms. Cilano's doctor directly demanding additional, confidential medical information concerning Ms.

Cilano without the right to do so under Federal and State law.  The doctor properly refused to provide Shea or Grand Bel further medical information beyond what Ms. Cilano had authorized him to provide.

41.     On 7 December 2018, Shea sent Ms. Cilano a letter entitled "FINE NOTICE".  The Fine Notice indicated that:

41.1.   Grand Bel refused to honor the recommendation of Ms. Cilano's doctor except "during warm weather";

41.2.   Grand Bel asserted a right to fine Ms. Cilano $10 a day "from the date the heat is turned on in the building should the a/c devise not be removed during colder weather"; and

41.3.   that Grand Bel had *retroactively* assessed fines from 1 November 2018 and Ms. Cilano's total fine was $370.00 as of the date of the Fine Notice.

42.     Ms. Cilano was blindsided and very upset over the Fine Notice letter and removed the intake from her window on 8 December 2018.  Ms. Cilano notified Shea on behalf of Grand Bel that the intake had been removed.  The fact that the intake was removed is clearly obvious to anyone who can see Ms. Cilano's bedroom window from outside the Cilano Property.

43.     Grand Bel and Shea's refusal to allow such a minor accommodation for an 82 year-old woman's medical needs, as recommended by her doctor, is unconscionable, vindictive, abusive, unfair, and deceptive.

44.     Shea has also threatened Ms. Cilano with the creation and recordation of a statement of lien against the Cilano Property for the failure to pay the retroactive fine.

45.     Since receiving the Fine Notice letter and the threats to create and record a statement of lien against her home, Ms. Cilano has been unable to focus on anything other than her unconscionable, vindictive, abusive, unfair, and deceptive treatment by Grand Bel and Shea and

worries constantly about having her car towed and other possible repercussions that would result from such an occurrence.  Ms. Cilano has suffered, and continues to suffer, headaches, loss of sleep, problems with her eating, and other emotional damages.

46.    Ms. Cilano has continued to make her monthly assessment payments; however, upon information and belief, her assessment payments have been improperly credited to the alleged fine rather than to her assessments.  Shea and Grand Bel have in fact concealed from Ms. Cilano how her payments have been applied.

47.    Ms. Cilano continues to suffer without the use of her indoor air conditioner and purification unit particularly on days with high humidly and/or unseasonably higher temperatures as we have had off and on for most of the past winter.

48.    Throughout this ordeal, Shea's efforts to collect consumer debt on behalf of Grand Bel was not based on law or facts, it was done for no reason other than to show Ms. Cilano who was the boss, *i.e.*, an unlicensed collection agency and property manager acting on behalf of Grand Bel who knows Shea is unlicensed and not permitted to act as a collection agency under Maryland law but has continued to do so in violation of the law.  Grand Bel has known since the commencement of the Martinez litigation on 30 September 2015 that Shea is acting illegally but has not severed its business relationship with Shea but instead has agreed to Shea's illegal activities on its behalf.

*(Factual Allegations Relevant to Ms. Wiggins)*

49.    Ms. Wiggins is a natural person who, from 18 November 2004 through 30 29 May 2018, owned and resided at real property known as 3926 Stone Gate Drive, Unit C, Suitland, Prince George's County, Maryland 20746 ("**Wiggins Property**").  Ms. Wiggins was not a member of the *Martinez* class.

11

50.    Ms. Wiggins purchased the Wiggins Property for her personal use, and the purchase was a consumer transaction.

51.    Wiggins Property is situated within Stonegate.

52.    In 2018, Ms. Wiggins made the decision to sell her condominium and entered into a real property sales agreement with Tony Crews as the proposed buyer.

53.    Stonegate and Shea became aware of Ms. Wiggins' intent to sell the Wiggins Property when they were notified to prepare a "re-sale" package for her condominium.

54.    Stonegate, by and through Shea acting on its behalf, asserted that Ms. Wiggins allegedly owed money to Stonegate for the repairs to the condominium directly below Ms. Wiggins' condominium.

55.    Stonegate's assertion, by and through Shea, that Ms. Wiggins owed money to Stonegate was an attempt to collect a consumer debt.

56.    The Stonegate governing documents mandate that all maintenance and repairs to condominium units are the responsibility of the owners of the condominium unit and not the responsibility of Stonegate.

57.    Stonegate had no authority or right to assert, attempt to collect, or actually collect any debt owed by Ms. Wiggins to the owner of the condominium directly below the Wiggins' Property or to any other person alleging any debt owed by Ms. Wiggins to any other person.

58.    Shea had no authority or right to assert, attempt to collect, or actually collect any debt owed by Ms. Wiggins.  In fact no such money was owed and Shea knowingly inflated the sums claimed due from Wiggins with knowledge that she had no such right to demand the sums claimed due because those sums had never been incurred by Stonegate related to the Wiggins Property.

59.    Shea, on behalf of Stonegate, demanded on 23 March 2018 that Ms. Wiggins pay $6,650.00 to Shea on behalf of Stonegate or she would preclude the sale of the Wiggins Home to Ms. Crews.

60.    Shea falsely represented to the Settlement firm on 23 March 2018 that the $6,650.00 was a debt Ms. Wiggins owed to Stonegate and was effectively a lien against the Wiggins Home and that the Wiggins Home could not be sold without the $6,650.00 being paid.  In fact, no Lien was of record related to the Wiggins Property and no sum was lawfully claimed due from Wiggins because Stonegate had never incurred the sum claimed due from Wiggins as the result of any act or omission of Wiggins.  Further, under Stonegate's own governing documents and Maryland law, Shea had no right to threaten or represent such a lien in the first instance even if Ms. Wiggins was legally responsible for the sum claimed due (which she was not).

61.    In addition, Shea and Stonegate had already received and accepted $5,000 from Ms. Wiggins' insurance carrier, USAA, as full and complete compensation for the damage allegedly caused by Ms. Wiggins' leaky water heater; the effort to extort an additional $6,650.00 from Ms. Wiggins' settlement of the Wiggins Property simply an effort to commit insurance fraud by Shea on behalf of Stonegate to collect sums not related to a leaky water heater and to claim sums not lawfully due.

62.    As of 3 April 2018, there was no lien against the Wiggins Property other than Ms. Wiggins' recorded mortgage, *i.e.*, there was no statement of lien against the Wiggins Property recorded in the Prince George's land records.

63.    As of 3 April 2018, there was no civil litigation, by Stonegate or any other person, pending against Ms. Wiggins for any alleged debt.

64.    Ms. Wiggins denied that she owed Stonegate $6,650.00 or that she was legally responsible for this sum; as support for her denial, Ms. Wiggins relied upon the conclusion of her own insurance company's determination that the alleged damage and loss caused by Ms. Wiggins' leaky water heater was no more than $5,000 and Shea and Stonegate had released any dispute to that evaluation by accepting, without condition, the benefit of the USAA payment of $5,000 for the occurrence.

65.    Ms. Wiggins was to have settled the sale of the Wiggins Home not later than 30 March 2018; however, Stonegate, by and through Shea on its behalf continued to assert, directly to the Settlement Firm that they would not clear the sale unless the $6,650.00 was paid at settlement.  As a direct and proximate result of Shea's unconscionable, abusive, unfair, and deceptive debt collection practices discussed herein, Ms. Wiggins' sale of the Wiggins Property was delayed until 3 April 2018.

66.    Ms. Wiggins could not afford to lose the pending sale of the Wiggins Property.  As a direct and proximate result she incurred the legal expense to determine whether or not Shea's claim on behalf of Stonegate was lawful and correct valued at the sum of $300.  Until she incurred this expense and legal advice, Ms. Wiggins was prevented from completing the sale of the Wiggins Property.

67.    On 3 April 2018, Ms. Wiggins sold the Wiggins Property to Ms. Crews.  As a direct and proximate result of Shea's unconscionable, abusive, unfair, and deceptive debt collection practice, Ms. Wiggins was required to pay the additional sum of $370 for the April 2018 monthly assessment to Stonegate if the settlement had not been delayed by Shea's improper threat and demand of $6,650 from Ms. Wiggins for sums she did not owe Stonegate.

68.     Less than a year before the commencement of this action to 3 April 2018, Ms. Wiggins became aware of the improper demand of 23 March 2018 of sums not lawfully owed and through the delayed sale of the Wiggins Property, Ms. Wiggins sustained other damages and losses due to Shea's unlawful, abusive, unfair, and deceptive treatment by Shea in the form of non-economic damage which manifested in worry that the sale of the Wiggins Property would not occur based on Shea's unlawful threats, anxiety that she would be drawn into a fraudulent insurance act by Shea on behalf of Stonegate, and frustration that Shea's conduct would interfere in her plans to move to another state.

### FACTUAL ALLEGATIONS RELEVANT TO MORE THAN ONE PLAINTIFF OR CLASS

*(Factual Allegations Relevant to 2018 Maryland Laws Ch. 345 (H.B. 575))*

69.     On 24 April 2018, H.B. 575 was enacted becoming 2018 Maryland Laws Ch. 345 (H.B. 575).

70.     2018 Maryland Laws Ch. 345 (H.B. 575) purported to repeal and reenact three subsections of the Maryland Condominium Act, *i.e.*, §§ 11-101(a) and (c) and 11-103(c)(1) and to add one sub-section, *i.e.*, § 11-103(d).

71.     2018 Maryland Laws Ch. 345 (H.B. 575) purported to allow amendments of declarations "[n]otwithstanding the provisions of the declaration or bylaws"; however, 2018 Maryland Laws Ch. 345 (H.B. 575) did *not* allow the amendment of declarations that affected unit owner's rights pursuant to REAL PROP. §§ 11-107 and 11-108 or rights previously conveyed to a unit owner by deed.

72.     REAL PROP., § 11-107(c) provides that:

> The percentage interest provided in subsections (a) and (b) of this section may be identical or may vary. The percentage interests **shall have a permanent character** and, **except as specifically provided by this title**, may not be changed without the **written consent of all** of the unit owners and

their mortgagees.  Any change shall be evidenced by an amendment to the declaration, **recorded among the appropriate land reco**rds. The percentage interests may not be separated from the unit to which they appertain. Any instrument, matter, circumstance, action, occurrence, or proceeding in any manner affecting a unit also shall affect, in like manner, the percentage interests appurtenant to the unit.  (emphasis added).

73.    2018 Maryland Laws Ch. 345 (H.B. 575) did not alter or amend Real Prop., § 11-107(c).  In other words, the only proper reading of 2018 Maryland Laws Ch. 345 (H.B. 575) would be to say that it was intended to act prospectively to new condominiums created after 2018 Maryland Laws Ch. 345 (H.B. 575)'s effective date or alternatively, to new property owner's in existing condominium regimes after the effective dates.  The General Assembly does not have the authority to enact legislation to interfere with vested property rights already in existence.

74.    REAL PROP., § 11-108(a) provides:

Subject to the provisions of subsection (c) of this section, the common elements may be used only for the purposes for which they were intended **and, except as provided in the declaration, the common elements shall be subject to mutual rights of support, access, use, and enjoyment by all unit owners**.  However, subject to the provisions of subsection (b) of this section, any portion of the common elements designated as limited common elements shall be used only by the unit owner of the unit to which their use is limited in the declaration or condominium plat.  (emphasis added).

75.    2018 Maryland Laws Ch. 345 (H.B. 575) did not alter or amend Real Prop., § 11-108(a).

76.    2018 Maryland Laws Ch. 345 (H.B. 575) became effective 1 October 2018.

77.    2018 Maryland Laws Ch. 345 (H.B. 575) allows the "suspension" of property rights of condominium unit owners, including unit owners' percentage rights in certain common elements, with the affirmative vote of "at least 60% of the *total eligible voters* of the condominium under the voting procedures contained in the declaration or the bylaws."  [emphasis added]

78.    Grand Bel believes that 2018 Maryland Laws Ch. 345 (H.B. 575) permits it to alter or suspend the vested property rights of property owners in Grand Bel that existed before 1 October 2018.

*(Factual Allegations Relevant to Shea)*

79.    Shea Management, Inc. was incorporated in Maryland (SDAT ID.: D03928843) on 14 July 1994, forfeited on 5 October 2001, reinstated on 11 February 2011, again forfeited on 1 October 2012, reinstated on 14 November 2016, again forfeited on 13 October 2017 and remains forfeited as of the date of this Class Action Complaint, 18 March 2019.

80.    Although Shea Management, Inc. was forfeited, for the third time, on 13 October 2017, Shea has purposefully misrepresented its status as a corporation in good standing to the public and has continued to do business falsely representing that it is a Maryland corporation.

81.    For all periods and issues relevant to this civil action, Shea:

81.1.    has and continues to falsely assert to the Plaintiffs, all class members, and the general public that "Shea Management, Inc." is a viable business entity in good standing; a Maryland corporation; and authorized to collect consumer debt, both current and delinquent, in Maryland;

81.2.    is a "debt collector" as that term is defined at the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), more specially, as defined at 15 U.S.C. § 1692(a)(6);

81.3.    is a "collector" and person subject to the Maryland Consumer Debt Collection Act, COM. LAW. §§ 14-201, *et seq.*, and a person and "merchant" pursuant to the Maryland Consumer Protection Act, COM. LAW. §§ 13-101, *et seq.*;

81.4.   is a "collection agency" as that term is defined in the Maryland Collection Agency Licensing Act ("**MCALA**"), Bus. Reg. §§ 7-101, and is required to be licensed as a collection agency (Bus. Reg. § 7-401(a));

81.5.   has failed and/or refused to obtain the licensing required by MCALA but has and continues to collect consumer debt, a criminal act (Bus. Reg. § 7-401(b));

81.6.   has failed and/or refused to obtain the licensing required by MCALA but has and continues to collect consumer debt, which is a *per se* unfair and deceptive trade practice and a violation of the Maryland Consumer Protection Act (Com. Law § 13-301(14)(xxix) and the Maryland Consumer Debt Collection Act (Com. Law § 14-202(1));

81.7.   is the authorized agent of Grand Bel;

81.8.   is the authorized agent of Stonegate; and

81.9.   is the agent and collection agency for more than twenty Maryland condominiums that include more than 1,000 consumer condominium unit owners.

82.   Shea collects consumer debt, including but not limited to consumer debt that is in default or alleged to be in default, for a number of condominiums and home owners' associations in Maryland.

83.   As part of its routine and regular debt collection practices (*i.e.*, of delinquent and/or defaulted debts), Shea employs and utilizes employees, who are non-attorneys, for the purposes of collecting consumer debt including delinquent consumer debt.

84.   Shea regularly engages in the collection of consumer debt from Maryland residents, including Ms. Cilano, Ms. Wiggins, and the Shea Class Members, concerning their personal residences through the use of the mails and other forms of interstate commerce.

85.    Shea seeks to collect consumer debts relating to community association dues due to another and also after default and on behalf of other persons based upon contracts it enters into with each community association that Shea represents.  At the time Shea enters into these various contracts, many homeowners in the associations were not paying their assessments and Shea became specifically responsible to increase the collection of assessments and fines on behalf of the various associations.

86.    In addition, Shea directly and indirectly supports the filing of lawsuits and liens in connection with its collection activities as the agent but not the employee of the Grand Bel and other community associations.

87.    Despite these practices, Shea does not have the mandatory collection agency license required under MCALA.  Shea has operated and continues to operate without a license thus (i) skirting the requirements complied with by hundreds of other bona fide collection agencies in Maryland, and thus providing Defendant an unfair competitive advantage and (ii) avoiding the mandatory protections intended for Maryland consumers by the legislature and regulatory authorities.  The collection actions brought by Shea are brought as the agent of a community association and violate state debt collection laws.

88.    The United States District Court for Maryland, with the emphatic and persuasive support of the Maryland Collection Agency Licensing Board, has previously held that a homeowner association management company was required to have a Maryland collection agency license "prior to engaging in collection activities related to the condominium owner's unpaid condominium fee, even though neither engaged in debt collection as a primary business." *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012).

89.    The Government Accounting Office (GAO) recently summarized public enforcement of this kind of scheme as follows:

> our analysis of information provided by the National Association of Attorneys General found at least 60 enforcement actions were taken by state attorneys general against debt collection companies from January 2006 through May 2009, of which 28 involved or may have involved the collection of credit card debt. These actions alleged a variety of illegal debt collection practices, such as deducting money from consumers' bank accounts without authorization, **operating in states without proper licenses**, and refusing or failing to provide consumers with proof of their debts. Generally, state attorneys general either negotiated a settlement with the debt collection company or brought a court action against the company. Settlements included penalties such as refunds to consumers, cancellation of consumers' debts, civil penalties, and injunctive relief aimed at preventing future collection violations.

GAO Report, Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology, September 2009 (available at http://www.gao.gov/new.items/d09748.pdf) at Pages 38-39 [emphasis added].

90.    Shea regularly collects on consumer debts in the State of Maryland. The consumer debts pursued by Shea are debts owed to other persons — *i.e.*, common ownership community associations — including many which are alleged to be in default, or whose association accounts are acquired (or renewed) by Shea and the association after a portion of the assessments due to that association are in default.

*(Factual Allegations Relevant to Grand Bel)*

91.    Defendant Grand Bel is an unincorporated Maryland condominium, as that term is defined at REAL PROP., § 11-101(e), and is located at 3800-3854 Bel Pre Road, Silver Spring, Montgomery County, Maryland 20906.

92.    Grand Bel is governed by the Maryland Condominium Act, the Grand Bel Declaration, the Grand Bel Bylaws in the order listed.

93.    The original Grand Bel Declaration ("**Grand Bel Declaration**") was recorded in the Montgomery County land records on 30 December 1975 at book 4733 staring at page 082.

94.    Section 8(a)(5) of the Grand Bel Declaration provides that the common elements of Grand Bel include, "[a]ll recreational or community facilities, all unassigned parking spaces and all driveway areas, streets, fences and walkways" [emphasis added].

95.    Exhibit C to the Grand Bel Declaration specifically assigns a designated parking space, as a limited common element, to each of the units situated within Grand Bel.

96.    The Grand Bel Declaration provides that each Unit Owner shall have the sole right to the use of an assigned parking space identified in the declaration.

97.    The specific assignment of a parking space to a unit for the use of the unit owner converts the parking space from a common element to a limited common element.

98.    The limited common element assigned to the Cilano Property by the Declaration is parking space 114.  This vested property right is memorialized in Ms. Cilano's Deed to the Cilano Property which was of record in the land records of Montgomery County before the effective date of 2018 Maryland Laws Ch. 345 (H.B. 575).

99.    Most deeds, if not all deeds including Ms. Cilano's deed, transferring real property situated within Grand Bel transfers the former unit's owners' assigned parking space.

100.    Exhibit C to the Grand Bel Declaration also provides that each Unit Owner in Grand Bel has a property interest on a specific percentage basis in the association's common elements other than limited common elements.

101.    The original Grand Bel Declaration does not permit any person or Grand Bel to restrict a Unit Owner's property interest in the association's common elements.

102.    Prior to 17 January 2019, the Grand Bel Declaration had not been amended but it did authorize amendments by certain means.

103.    The original By-Laws did not permit any person to restrict a Unit Owner's property interest in the association's common elements for the purposes of debt collection of alleged past due sums owed on assessments.

104.    The original By-Laws provide that "[o]ne parking space per unit shall be assigned in accordance with the provisions of the Declaration. All remaining parking spaces shall be used by the Unit Owners for self-service parking purposes as provided in the Declaration." *See* By-Laws at Article V, § 12.

105.    The Court of Appeals has held for decades that a community association, or a person or Board of Directors acting on its behalf, may not abridge the property rights of a person unless authorized to do so under the law or declaration and then only by the affirmative vote of 100% of all unit owners and mortgagees. *See, Ridgley Condo. Ass'n, Inc. v. Smyrnioudis*, 343 Md. 357 (1996). This holding has been confirmed since *Ridgely*, the last such confirmation being *Elvaton Towne Condominium Regime, Inc. v. Rose*, 453 Md. 684 (2017).

106.    No document subordinate to the Declaration may change, limit, or abridge the Named Plaintiff's or Grand Bel Class Members' vested property rights.

107.    Without the legal authority to do so under the Declaration or original By-Laws, the Board of Directors for Grand Bel adopted certain Amended Administrative Rules & Regulations Governing the Collection of Assessments, Parking Space Assignment, Vehicle Violations and Enforcement on August 27, 2013 ("**Amended Administrative Rules & Regulations**").

108.    Prior to 17 January 2019 and less than three years before the commencement of this action, Grand Bel and its authorized agents including Shea, have threatened to enforce, attempted

to enforce, and actually enforced the Amended Administrative Rules & Regulations against Ms. Cilano and the Grand Bel Class Members on a regular and routine basis even though Maryland law does not permit them to do so.

109. On May 26, 2015, through its authorized agent Shea, Grand Bel announced its policy to restrict the use of the Grand Bel pool to any Unit Owner it alleged to be delinquent in payment of assessments.

110. The pool, and other recreational facilities, are general common elements to which every Unit Owner has a vested property right and a percentage interest.

111. On July 7, 2015, the Office of the Attorney General for the State of Maryland wrote to Grand Bel and requested that it stop interfering in the vested property rights of Unit Owners through their right to the parking available in the community for the purpose of collecting alleged past due assessments and other fees.

112. The Grand Bel By-Laws permit the Board of Directors to take limited actions to collect alleged unpaid assessments. This limited authority is:

112.1. to assess late fees. *See* By-Laws at Article V, § 3.

112.2. to execute a lien on the Unit Owners' Property pursuant to the Maryland Contract lien Act. *See* By-Laws at Article V, § 3; Article IX, § 1; Article XI, § 2(a);

112.3. to seek a judgment for money damages. *See* By-Laws at Article XI, § 1(a); Article XI, § 2(d).

112.4. to foreclose upon a lien or judgment obtained. *See* By-Laws at Article XI, § 1(a); Article XI, § 2(c).

112.5. to prevent sale of any unit by a Unit Owner "unless and until" all unpaid assessments are paid. *See* By-Laws at Article IX, § 2.

113.    On 17 January 2019, Grand Bel recorded its an amendment of its Declaration ("**Grand Bel Declaration Amendment**") in the Montgomery County land records at book 57117 staring at page 304.

114.    The Grand Bel Declaration Amendment is void *ab initio* as it violates the United States Constitution.

115.    The Grand Bel Declaration Amendment is void *ab initio* as it violates the Maryland Constitution.

116.    The Grand Bel Declaration Amendment is void *ab initio* as Grand Bel failed to comply with the requirements of the Maryland Condominium Act and/or the Grand Bel Declaration to amend a declaration and/or to amend a condominium's governing documents in such a way as to alter vested property rights and/or percentage interest of one or more unit owners including Ms. Cilano.

117.    For all periods and issues relevant to this litigation, Grand Bel:

117.1.  is an unincorporated Maryland condominium association;

117.2.  is a condominium governed by the Maryland Condominium Act ("**MCA**"), REAL PROP., §§ 11-101, *et seq*., its recorded Declaration, and its bylaws, in that order;

117.3.  is a "collector" as that term is defined by the Maryland Consumer Debt Collection Act ("**MCDCA**"), COM. LAW §§ 13-101 and, by its incorporation, the Maryland Consumer Protection Act ("**MCPA**"),COM. LAW §§ 14-201; and

117.4.  a "merchant" as that term is defined by the Maryland Consumer Protection Act ("**MCPA**"), COM. LAW §§ 13-101.

<u>CLASS ALLEGATIONS</u>

118.    The Plaintiffs bring certain claims, *infra.*, on behalf of one or more classes of similarly situated persons related to Defendant Shea under Fed.R.Civ.P. 23 ("**Shea Class**").   The Plaintiffs propose, as the definition of the Shea Class, that it be defined as follows:

> All those individuals for whom Shea attempted, directly or indirectly, to collect a consumer debt on behalf of another in the three years immediately preceding this Class Action.  Excluded from the Shea Class are all claims which accrued by acts or omissions before 26 May 2018 by Shea for persons who were members of the certified class against Shea in *Martinez v. Grand Bel Condominium*, Circuit Court for Montgomery County, case 410129V.

119.    Ms. Wiggins and Ms. Cilano are the named plaintiffs for the Shea Class.

120.    The Plaintiffs also bring certain claims, *infra.*, on behalf of one or more classes of similarly situated persons related to Defendant Shea under Fed.R.Civ.P. 23 ("**Shea Sub-Class**"). The Plaintiffs propose, as the definition of the Shea Class, that it be defined as follows:

> All members of the Shea Class for whom Shea attempted, directly or indirectly, to collect a consumer debt on behalf of another in the one year immediately preceding this Class Action.

121.    Ms. Wiggins and Ms. Cilano are the named plaintiffs for the Shea Sub-Class.

122.    Plaintiff Cilano also brings certain claims, *infra.*, on behalf of one or more classes of similarly situated persons related to Defendant Grand Bel under Fed.R.Civ.P. 23 ("**Grand Bel Class**").  The Plaintiff Cilano proposes, as the definition of the Grand Bel Class, defined as follows:

> All those individuals who were condominium unit owners of property situated within Grand Bel (i) before 1 October 2018 and (ii) who were threatened by Grand Bel with the loss, temporarily or permanently, of vested property rights, including their percentage interest in the condominium on or after 1 October 2018.

123.    Ms. Cilano is the named plaintiff for the Grand Bel Class.

124.    The Plaintiffs bring certain of their Shea Class, Shea Sub-Class, and Grand Bel Class claims solely upon the basis of Fed.R.Civ.P. 23(c)(4) to determine certain issues on a class-wide basis whether (i) Grand Bel's actions by threatening and/or attempting to collect debts by precluding the use of certain common elements is constitutional or otherwise is improper under Maryland law and whether Grand Bel is liable to the Grand Bel Class members under the claims asserted herein against it for their individual, actual damages, (ii) whether Shea's acts as a collection agency without the mandatory license are unfair and deceptive under the Maryland Consumer Protection Act and the Maryland Consumer Debt Collection Act and she is liable to the Shea Class and Shea Sub-Class for actual damages.  These issues are narrow and, if true, will leave to each Grand Bel Class members and Shea Class and Shea Sub-class members the decision of whether to seek individual, actual damages or losses individually or not.  In this action, Ms. Cilano does not seek class-wide wide damages and losses except for class-wide statutory damages to the Shea Sub-class members under the FDCPA; Ms. Cilano does also seek class-wide declaratory relief related to Defendant Grand Bel's acts and omissions against the vested rights of the Grand Bel Class members.  Ms. Cilano and Ms. Wiggins also seeks their own individual damages and losses.

125.    The particular members of the Grand Bel Class, Shea Class, and Shea Sub-class members are capable of being described without difficult managerial or administrative problems. The members of the Grand Bel Class, Shea Class, and Shea Sub-class are also readily identifiable from the information and records in the possession or control of the Defendants or their affiliates and agents and from public records.

126.    The Grand Bel Class, Shea Class, and Shea Sub-class members are sufficiently numerous, exceeding more than one hundred persons each, that individual joinder of all members is impractical.  This allegation is based on a data search of public records.

127.    There are questions of law and fact common to the Grand Bel Class, Shea Class, and Shea Sub-class which predominate over any questions affecting only individual members of the Grand Bel Class, Shea Class, and Shea Sub-class and, in fact, the wrongs alleged against the Defendants by the Grand Bel Class, Shea Class, and Shea Sub-class members and the remedies sought by Ms. Cilano, Ms. Wiggins, and the Grand Bel Class, Shea Class, and Shea Sub-class members against the Defendants are identical.  The common issues.

128.    These common questions of law are fact for the Shea Class and Shea Sub-class include but are not limited to:

128.1.  whether Shea lacked the legal right to attempt to collect consumer debts from members of the Shea Class and Sub-Class as an unlicensed collection agency;

128.2.  whether Shea acted as a collection agency in the State of Maryland in the three years before the commencement of this action;

128.3.  whether Shea's acts and omissions violate the Fair Debt Collection Practices Act, therefore making Shea liable to the Shea Sub-class members as a matter of law for the Shea Sub-class members for an award of class-wide, statutory damages and also for a determination of liability to the Shea Sub-class members for their individual and actual FDCPA damages;

128.4.  whether Shea's acts and omissions as an unlicensed collection agency constitute violations of the Maryland Consumer Protection Act and/or the Maryland Consumer Debt Collection Act and therefore make Shea liable to the Shea Class and Shea Sub-class members as a matter of law for the Shea Class and Shea Sub-class members to prove their individual damages in individual actions;

128.5.  whether Shea threatened or took actions that she had no right to take under Federal and/or Maryland law;

128.6.  whether Shea may charge or bill Unit Owners, directly or indirectly for collection activities taken while not licensed as a collection agency.

129.    These common questions of law are fact for the Grand Bel Class include but are not limited to:

129.1.  whether Grand Bel is liable for its knowing hiring and retention of an unlicensed collection agency—i.e. Shea;

129.2.  whether Grand Be is liable for the conduct of its agent Shea;

129.3.  whether, prior to 17 January 2019, Grand Bel precluded or threatened to preclude the use of certain common elements, including limited common elements without the legal right to do so and for the purpose of collecting consumer debt including assessments, fees, and costs alleged to be due and owing;

129.4.  whether, since 17 January 2019, Grand Bel precluded or threatened to preclude the use of certain limited common elements without the legal right to do so and for the purpose of collecting consumer debt including assessments, fees, and costs alleged to be due and owing;

129.5.  whether Grand Bel's acts and omissions related to precluding access to certain common elements for the purpose of collecting consumer debts constitute violations of the Maryland Consumer Protection Act and/or the Maryland Consumer Debt Collection Act;

129.6.  whether Grand Bel threatened or took actions that it had no right to take under Maryland law;

129.7.  whether the application of 2018 Maryland Laws Ch. 345 (H.B. 575) to the vested rights of the Grand Bel Class members violates the Federal and Maryland's constitution and otherwise improperly interferes in the vested rights of the Grand Bel Class members;

129.8.  whether the procedures used by Grand Bel to adopt the Grand Bel Declaration Amendment complied with the Maryland Condominium Act and the Grand Bel governing documents (*i.e.*, assuming arguendo that 2018 Maryland Laws Ch. 345 (H.B. 575) is legal, did Grand Bel properly adopt the Grand Bel Declaration Amendment);

129.9.  whether Grand Bel's acts and omissions in violation of Maryland law and the U.S. Constitution and Maryland Constitution therefore makes Grand Bel liable to the Grand Bel members as a matter of law for the Grand Bel Class members to prove their individual damages in individual actions; and

129.10.    whether Grand Bel threatened or took actions that it had no right to take under Federal and/or Maryland law.

130.    The Defendants' defenses (which defenses are denied) would be typical or identical for each of the member of the Grand Bel Class, Shea Class, and Shea Sub-class and will be based on the same legal and factual theories.

131.    Ms. Cilano and Ms. Wiggins will also fairly and adequately represent and protect the interests of the Grand Bel Class, Shea Class, and Shea Sub-class.  They have retained counsel experienced in consumer class actions including actions involving unlawful collection practices. Ms. Cilano and Ms. Wiggins also do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the classes and subclass.

132.    Certification of the Grand Bel Class and Shea Class under Fed.R.Civ.P. 23 is appropriate as to the members of the Grand Bel Class and Shea Class in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

133.    A class action will cause an orderly and expeditious administration of claims by the members of the Grand Bel Class, Shea Class, and Shea Sub-class and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

134.    The only individual questions concern the identification of members of the classes and subclass.  This information can be determined by a ministerial examination of public records in various court houses or from the Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

135.    The Grand Bel Class and Shea Class claims are typical of the claims of the Grand Bel Class and Shea Class members pursuant to Fed.R.Civ.P. 23 since they are based on and arise out of identical facts constituting the wrongful conduct of the Defendants.

136.    Ms. Cilano and Ms. Wiggins will fairly and adequately protect the interests of all members in the prosecution of this action on behalf of the class and subclass members.  They are similarly situated with, and have suffered similar injuries as, the members of the classes and sub-class they seek to represent.  They feel they have been wronged, wish to obtain redress of the wrong, and want Defendants stopped from enriching themselves from illegal activities or otherwise perpetrating similar wrongs on others.

137.    While not sought in this action on behalf of the Grand Bel Class, Shea Class, and Shea Sub-class members, the Grand Bel Class and Shea Class members have suffered damages, losses, and harm similar those sustained by Ms. Cilano and Ms. Wiggins and described above. Ms. Cilano and Ms. Wiggins do seek an award of statutory damages on behalf of the Shea sub-class as well as their own individual, actual damages under the claims asserted herein.

**COUNT I: DECLARATORY JUDGMENT & INJUNCTIVE RELIEF**
*(Plaintiff Ms. Cilano, individually and on behalf of the Grand Bel Class against*
*Defendant Grand Bel)*

138.    Ms. Cilano adopts by reference the Factual Allegations contained in the preceding

paragraphs of this Complaint with the same effect as if herein fully set forth.

139.    This is an action for declaratory judgment and injunctive relief pursuant to 28

U.S.C. § 2201, et seq., Fed.R.Civ.P. 57, CTS. & JUD. PROC., § 3-409, and Fed.R.Civ.P. 23(b)(2)

for the purpose of determining a question of law between the parties and terminating uncertainty

and controversy giving rise to this proceeding.

140.    An actual controversy exists between the parties indicating imminent and inevitable

litigation and continuing harm to Ms. Cilano and the Grand Bel Class Members that can be termi-

nated by the declaration requested.

141.    An adjudication and declaration will serve to terminate the continuing and actual

controversy between the parties that exists at this time.

142.    Grand Bel asserts that amendments of the Maryland Real Property Article enacted

on 24 April 2018, effective on 1 October 2018, i.e. 2018 Maryland Laws Ch. 345 (H.B. 575), were

lawful and permitted it to amend its declaration to interfere with and otherwise implead the vested

property rights of Ms. Ciano and the Grand Bel Class members; however, Ms. Cilano and the

members of the Grand Bel Class assert that amendments of the Maryland Real Property Article

enacted on 24 April 2018, effective on 1 October 2018, i.e. 2018 Maryland Laws Ch. 345 (H.B.

575), are illegal, a violation of the United States Constitution, the Maryland Constitution, and

Maryland law.

143.    More specifically, Grand Bel has asserted a right to amend its declaration so as to

limit Ms. Ciano and the Grand Bel Class members' vested property rights and percentage interest

in Grand Bel for the purpose of debt collection without the consent of 100% of unit owners and mortgagees of condominium units situated within Grand Bel; however, Ms. Cilano and the members of the Grand Bel Class assert that Grand Bel has no right to limit unit owners' property rights and percentage interest in Grand Bel for the purpose of debt collection without the consent of 100% of unit owners and mortgagees of condominium units situated within Grand Bel.

144.     Ms. Cilano and the members of the Grand Bel Class further assert that even if Grand Bel has a right to limit unit owners' property rights and percentage interest in Grand Bel pursuant to 2018 Maryland Laws Ch. 345 (H.B. 575), such a right only applies prospectively to new unit owners in Grand Bel following the later of (i) the effective date of 2018 Maryland Laws Ch. 345 (H.B. 575) or a properly enacted amendment to Grand Bel's governing documents.  To suggest otherwise would be to permit Grand Bel to suggest the General Assembly's enactment of 2018 Maryland Laws Ch. 345 (H.B. 575) permitted it to interfere with the vested rights of Ms. Cilano and the Grand Bel class members.

**WHEREFORE**, the Plaintiff Cilano and the Grand Bel Class members demand:

[1]  that the Court certify the Grand Bel Class pursuant to Fed.R.Civ.P. 23(b)(2) with Ms. Cilano as the named representative and her counsel as class counsel on behalf of the Grand Bel Sub-class;

[2]  that this Court determine and adjudicate the rights and liabilities of the parties with respect to Grand Bel's Grand Bel Declaration Amendment of its declaration;

[3]  that this Court enter an injunction, both temporary and permanent, precluding Grand Bel from enforcing, directly or indirectly, its Grand Bel Declaration Amendment;

[4] that this Court declare 2018 Maryland Laws Ch. 345 (H.B. 575) unconstitutional under the United States Constitution and the Maryland Constitution as applied to Ms. Cilano's and the Grand Bel Class member's vested property rights;

[5] that this Court declare the Grand Bel Declaration Amendment void *ab initio* as a violation of the United States Constitution;

[6] that this Court declare the Grand Bel Declaration Amendment void *ab initio* as a violation of the Maryland Constitution;

[7] that this Court declare the Grand Bel Declaration Amendment void *ab initio* as a violation of the voting procedures of the Maryland Condominium Act and/or the Grand Bel Declaration and Bylaws;

[8] that this Court enjoin Grand Bel and its agents from precluding Ms. Cilano and the Grand Bel Class members from using the parking areas, community recreational areas, and other general common elements of the Grand Bel for the purpose of collecting alleged consumer debts owed to the Grand Bel;

[9] that this Court determine, adjudicate, and declare whether Grand Bel could lawfully preclude Ms. Cilano and the Grand Bel Class members from using the parking areas, community recreational areas, and other common elements of the Grand Bel for the purpose of collecting alleged consumer debts allegedly owed to the Grand Bel;

[10]    that the Court award Plaintiff Ciano and the Grand Bel Class members their costs and attorney fees of these proceedings; and

[11]    for such other relief as the Court may find necessary and appropriate.

**COUNT II:  VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
*(Plaintiffs Ms. Cilano and Ms. Wiggins, each individually and on behalf of the Shea Sub-Class, sue Defendant Shea)*

145.     The Plaintiffs adopt by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

146.     Defendant Shea has engaged in the business of collecting consumer debts related to consumer real property and services on behalf of others as detailed *supra* and in furtherance of that business sought to collect from each of the Plaintiffs and the Shea Sub-Class members without the right to do so she was not licensed as a collection agency.

147.     Defendant Shea has also utilized unlawful threats of collection of sums not actually owed from the Plaintiffs as well.

148.     This Court and numerous Maryland Courts have held that a person may not collect consumer debt on behalf of another in Maryland without being licensed as a collection agency.

149.     More specifically, this Court has addressed this issue in the context of a property manager attempting to collect and actually collecting consumer debt on behalf of common owner-ship association without a collection agency license (*e.g.*, *Fontell v. Hassett,* 891 F.Supp.2d 739 (D. Md. 2012) *aff'd in unreported decision*, 574 Fed.Appx. 278 (4th Cir. 2014).

150.      Shea is a Debt Collector within the meaning of 15 U.S.C. § 1692a(6) by collecting or attempting to collect from the Plaintiffs and the Shea Sub-class on behalf of another.

151.     By communicating with the Plaintiffs and the Shea Sub-class members directly and indirectly and threatening and demanding sums on behalf of another without the right to do so, Shea used false, deceptive, or misleading representations or means in connection with the collection of the alleged consumer debts of the Plaintiffs and Shea Sub-class members in violation of 15 U.S.C. § 1692e(5).

152.    Shea's actions and omissions described herein constitute unfair or unconscionable means to collect or attempt to collect from the Plaintiff and Shea Sub-class members in violation of 15 U.S.C. § 1692f.

153.    Plaintiffs and the Shea Sub-class members have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees as a result of Shea's illegal debt collection practices and direct and indirect actions described herein.

154.    The FDCPA provides for statutory damages in addition to actual damages.  The Plaintiffs and putative Shea Sub-class members' actual damages, proximately caused by Shea, are described herein which are incorporated herein by this reference as if repeated here.

**WHEREFORE**, the Plaintiffs, each on their own behalf and on behalf of the Shea Sub-Class, demand judgment in their favor and against Shea as follows:

[1] that the Court certify the Shea Sub-class pursuant to Fed.R.Civ.P. 23(b)(3) with Ms. Cilano and Ms. Wiggins as the named representatives and their counsel as class counsel on behalf of the Shea Sub-class;

[2] that the Court find Shea liable to the plaintiffs and the Shea Sub-class members under the FDCPA;

[3] that the Court award to the Shea Sub-class statutory damages in the amount permitted under the FDCPA in excess of $75,000.00;

[4] that the Court find pursuant to the FDCPA and Fed.R.Civ.P. 23(c)(4) that Shea is also liable to the Plaintiffs and Shea Sub-class members for their actual damages under the FDCPA (leaving the Sub-class members the right to pursue those actual damages in other actions as discussed herein and the Plaintiffs to recover their individual actual damages in this action);

[5] that the Court award Ms. Cilano an award of her individual, actual damages under the FDCPA in the sum of $30,000;

[6] that the Court award Ms. Wiggins an award of her individual, actual damages under the FDCPA in the sum of $20,000;

[7] that the Court award Plaintiffs and the Shea Sub-class members their reasonable attorney's fees and costs permitted under the FDCPA; and

[8] for such other relief as the Court may find necessary and appropriate.

**COUNT III:  CONSUMER PROTECTION —**
**VIOLATION OF MARYLAND CONSUMER DEBT COLLECTION ACT (MCDCA)**
**& MARYLAND CONSUMER PROTECTION ACT (MCPA)**
*(Plaintiffs Ms. Cilano and Ms. Wiggins, each individually and on behalf of the Shea Class sue Defendant Shea)*

155.    The Plaintiffs adopt by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

156.    Defendant Shea has engaged in the business of collecting consumer debts related to consumer real property and services on behalf of others as detailed *supra* and in furtherance of that business sought to collect from each of the Plaintiffs and the Shea Class Members without the right to do so she was not licensed as a collection agency.

157.    This Court and numerous Maryland Courts have held that a person may not collect consumer debt on behalf of another in Maryland without being licensed as a collection agency.

158.    Plaintiffs and the Shea Class members have reasonable relied upon Shea's demands for collection without knowledge that Shea had the legal right to collect upon others.  No reasonable person would believe that Shea would knowingly continue to attempt to collect and actually collect consumer debts for another without being licensed as a collection agency.

159.   More specifically, this Court has addressed this issue in the context of a property manager attempting to collect and actually collecting consumer debt on behalf of common owner-ship association without a collection agency license (*e.g.*, *Fontell v. Hassett,* 891 F.Supp.2d 739 (D. Md. 2012) *aff'd in unreported decision*, 574 Fed.Appx. 278 (4th Cir. 2014).

160.   A violation of the Maryland Collection Agency Licensing Act is a *per se* violation of the Maryland Consumer Protection Act (COM. LAW. § 13-301(14)(xxix)).

161.   A violation of the Maryland Collection Debt Collection Act is a *per se* violation of the Maryland Consumer Protection Act (COM. LAW. § 13-301(14)(iii)).

162.   The Plaintiffs and the Shea Class members have suffered damages, including emo-tional distress, proximately caused by Shea's acts and conduct as an unlicensed debt collector.

**WHEREFORE**, the Plaintiffs' demand as follows:

[1] that the Court certify the Shea Class pursuant to Fed.R.Civ.P. 23(b)(3) with Ms. Cilano and Ms. Wiggins as the named representatives and their counsel as class counsel on behalf of the Shea Class;

[2] that the Court find Shea liable to the plaintiffs and the Shea Class members under the MCPA/MCDCA;

[3] that the Court find pursuant to the MCPA/MCDCA and Fed.R.Civ.P. 23(c)(4) that Shea is also liable to the Plaintiffs and Shea Class members for their actual damages under the MCPA/MCDCA (leaving the Shea Class members the right to pursue those actual damages in other actions as discussed herein and the Plaintiffs to re-cover their individual actual damages in this action);

[4] that the Court award Ms. Cilano an award of her individual, actual damages under the MCDCA/MCPA in the sum of $30,000;

[5] that the Court award Ms. Wiggins an award of her individual, actual damages under the MCDCA/MCPA in the sum of $20,000;

[6] that the Court award Plaintiffs and the Shea Class members their reasonable attorney's fees and costs permitted under the MCPA; and

[7] for such other relief as the Court may find necessary and appropriate.

### Count IV:  Consumer Protection —
### Violation of Maryland Consumer Debt Collection Act (MCDCA)
### & Maryland Consumer Protection Act (MCPA)
(Plaintiff Ms. Cilano, individually and on behalf of the Grand Bel Class sue Defendant Grand Bel)

163.    The Plaintiff Cilano adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

164.    For all periods and issues relevant to this civil action, Grand Bel:

164.1.  is a person and "merchant" pursuant to the Maryland Consumer Protection Act, COM. LAW. §§ 13-101, *et seq*.;

164.2.  is a person and "collector" pursuant to the Maryland Consumer Debt Collection Act, COM. LAW. §§ 14-201, *et seq*.; and

164.3.  is the authorized principal of Shea.

165.    Defendant Grand Bel, as a collector and merchant, has engaged indirectly and indirectly in the business of collecting consumer debts related to consumer real property and services on its behalf as described *supra* and in furtherance of that business sought to collect from Plaintiff Cilano and the Grand Bel Class Members by utilizing Shea, and unlicensed collection agency, with knowledge that it had no right to do so.  Further, Grand Bel's knowledge demonstrates that it has conspired with Shea to knowingly violate remedial consumer protection laws like MCALA to force Plaintiff Cilano to be subject to unlawful debt collection practices.

166.    In addition, Grand Bel has utilized the unconscionable, abusive, unfair, and deceptive Grand Bel Declaration Amendment as part of its collection practices and under the color of law by recoding the document in the land records of Montgomery County to improperly threaten to interfere with and to actually interfere with the vested property rights of Plaintiff Cilano and the Grand Bel Class members.

167.    Plaintiff Cilano and the Grand Bel Class members have reasonably relied upon Grand Bel to conduct its activities related to them in accordance with the law governing the association.  No reasonable person would believe that Grand Bel would knowingly continue to attempt to collect and actually collect consumer debts by utilizing an unlicensed collection agency which is a crime or would attempt to interfere with the vested property rights of the Grand Bel class members or Plaintiff Cilano.

168.    There is no bona fide legal error defense for Grand Bel to assert against Plaintiff Cilano's and the Grand Bel Class members' claims asserted herein under the MCDCA/MCPA. *See e.g. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

169.    Grand Bel's acts described herein related to Plaintiff Cilano and the Grand Bel Class members violating COM. LAW § 14-202(8)(9),

170.    Grand Bel's violation of the Maryland Collection Debt Collection Act, in relation to Plaintiff Cilano and the Grand Bel Class members is a *per se* violation of the Maryland Consumer Protection Act (COM. LAW. § 13-301(14)(iii)).

171.    Grand Bel's acts described herein related to Plaintiff Cilano and the Grand Bel Class members also violates COM. LAW § 13-301(1)-(4).

172.    Plaintiff Cilano and the Grand Bel Class members have suffered damages, including emotional distress, proximately caused by Grand Bel's acts and conduct as described herein.

**WHEREFORE**, the Plaintiffs Plaintiff Cilano and the Grand Bel Class members' demand as follows:

[1] that the Court certify the Grand Bel Class pursuant to Fed.R.Civ.P. 23(b)(3) with Ms. Cilano as the named representative and her counsel as class counsel on behalf of the Grand Bel Class;

[2] that the Court find Grand Bel liable to Plaintiff Cilano and the Grand Bel Class members under the MCPA/MCDCA;

[3] that the Court find pursuant to the MCPA/MCDCA and Fed.R.Civ.P. 23(c)(4) that Grand Bel is also liable to Plaintiff Cilano and Grand Bel Class members for their actual damages under the MCPA/MCDCA (leaving the Grand Bel Class members the right to pursue those actual damages in other actions as discussed herein and Plaintiff Cilano to recover her individual actual damages in this action);

[4] that the Court award Ms. Cilano an award of her individual, actual damages under the MCDCA/MCPA in the sum of $20,000;

[5] that the Court award Plaintiff Cilano and the Grand Bel Class members their reasonable attorney's fees and costs permitted under the MCPA; and

[6] for such other relief as the Court may find necessary and appropriate.

Respectfully submitted,

*/s/ Phillip R. Robinson*
Phillip R. Robinson
Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
(301) 448-1304

*Attorneys for the Plaintiffs and Classes and Sub-class*