IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARIA ANTONIA CILANO** <br> **and** <br> **FELICIA WIGGINS**. <br> (on behalf of themselves and on behalf <br> a Class of similarly situated persons) <br> <br> Plaintiffs, <br> <br> v. <br> <br> **BARBARA Q. SHEA** (d/b/a Shea <br> Management, Inc.), *et al.* <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Case: 8:19-cv-00827-PWG <br> ) <br> ) <br> ) <br> ) <br> ) |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT AND SUPPORTING
MEMORANDUM OF LAW**

Plaintiffs, Maria Antonio Cilano and Felicia Wiggins (collectively "Plaintiffs"), and Defendant Barbara Q. Shea (d/b/a Shea management Inc.) ("Defendant") (jointly referred to as the "Parties"), through counsel and pursuant to Fed. R. Civ. P. 23, move this Court for preliminary certification and approval of the proposed class action settlement in this matter. The Parties respectfully say:

**I. INTRODUCTION**

1. On March 18, 2019, Plaintiffs filed the above-captioned class action lawsuit asserting class claims against Defendant under the Maryland Consumer Debt Collection Act, COM. LAW § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, § 13-301, *et seq.* ("MCPA") (hereinafter referred to as the "Lawsuit").

2. Plaintiffs allege that Defendant violated the MCDCA and MCPA r while acting as a collection agency without the required collection agency license pursuant to Maryland Collection Agency Licensing Act ("MCALA"), BUS. REG. § 7-101, *et seq*. Defendant denies these allegations.

3. After an arms-length negotiations in a settlement conference before the Honorable Gina L. Simms on February 5, 2021, the Parties entered into a Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), attached hereto as **Exhibit 1**.

4. Pursuant to Fed. R. Civ. P. 23(e), the Parties now seek preliminary certification and approval of the proposed class action settlement which will resolve the Lawsuit and actions pending before this Court. The Parties request the Court preliminarily certify the proposed class and preliminarily approve the proposed class action settlement by entering the Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order") attached hereto.

## II. SUPPORTING MEMORANDUM OF LAW

The Parties submit the following memorandum in support of their motion for preliminary certification and approval of class action settlement agreement.

### A. PROPOSED SETTLEMENT

As stated above, the Agreement is attached hereto as **Exhibit 1**. The significant terms of the proposed settlement are set forth in the following sub-paragraphs.

### 1. Certification of a Fed. R. Civ. P. 23(b)(3) Maryland Class.

For settlement purposes only, and pursuant to Fed. R. Civ. P. 23 (b)(3), the Parties seek preliminary certification of the following class of plaintiffs (hereinafter referred to as the "Class members"):

> Those persons, in the three years before the commencement of this action to the present, from whom Shea attempted and/or actually collected a consumer debt on behalf of any other person, who owned a unit in Stonegate or Grand Bel for personal purposes. Excluded from the Class are any persons who were members of the settlement class in *Martinez v. Shea* in the Circuit Court for Montgomery County.

Ex. 1, Agreement, at ¶ 6.

Defendant estimates that the size of the Class equals approximately 152 persons. *Id.*

### 2. Class Representative and Class Counsel Appointment.

The Plaintiffs propose and the Defendant agrees, for settlement purposes only, that Plaintiffs be designated the class representatives for the settling Class members (hereinafter referred to as the "Class Representatives" or "Plaintiffs"), and Phillip Robinson of the Consumer Law Center LLC be designated as counsel for the Class Members (hereinafter referred to as "Class Counsel"). *Id.* at ¶ 5, 7.

Class Counsel's qualifications are set forth in **Exhibit 2** hereto.

### 3. Notice to Class Members per Fed. R. Civ. P. 23.

Pursuant to Fed. R. Civ. P. 23(c)(2), Plaintiffs propose and the Defendant agrees that the Notice attached hereto as **Exhibit 3** shall be sent to each Class member. *See, e.g., Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 254 (3d Cir. 1975) ("By its terms, the mandatory notice requirement of (c)(2) applies only to actions maintained under (b)(3)."). The proposed settlement, therefore, provides for notice to the Class members to be sent to

3

each Class member within approximately 30 days of the Court's Preliminary approval of the Settlement Agreement. Ex. 1, Agreement, at ¶ 17. Notice to the Class shall be made by Class Counsel and Plaintiffs subject to supervision and verification by Defendant's counsel. *Id.*

### 4. Exclusions and Objections.

In compliance with Fed. R. Civ. P. 23(b)(3), the Class members will be permitted to exclude themselves from the class. Ex. 1, at ¶ 38. Any Class member who intends to object to the fairness of the settlement must file a written objection with the Court no later than 50 days after notice is sent. Ex. 1, at ¶ 37. Further, any such Class Member must, within the same time period, provide a copy of the written objection to Class Counsel and counsel for Defendants. *Id*. In the written objection, the Class member must state: his or her full name, address, telephone number and email address (if available); the reasons for his or her objection; and, whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel. *Id*.

Any Class member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise. *Id*.

### 5. Settlement Consideration.

As explained above, the proposed settlement class is a Rule 23(b)(3) settlement class, and, therefore, the settlement consideration is as described in Ex. 1, Agreement, at ¶¶ 30, 33.

### 6. Relief to the class.

The Class members will receive the benefit of the following:

- The Defendants will pay a sum of $73,000.00 to a Common Fund to be distributed to Class members, on a pro-rata basis, less (i) attorney's fees, costs and incentive payments that may be sought and approved by the Court; and, (ii) any costs associated with providing notice to all Class Members or administering the settlement.

*See Id.* at ¶ 30.

### 7. Class Representative Incentive Payments and Settlements.

In recognition of Plaintiffs' services as the Class Representatives, an incentive payment of $9,000.00 to Plaintiff Wiggins may be sought from the settlement fund. *See Id.* at ¶ 30(b)(i). Plaintiff Cilano has agreed to waive any request for an incentive payment in light of her individual settlement sum for her Fair Housing Act claim. *Id.* at FN 1.

### 8. Attorneys' Fees, (Non-Notice) Costs, and Expenses.

In addition to the benefits described above, Class Counsel, if he chooses to do so, shall be entitled to petition the Court for an award of reasonable attorney's fees and costs to Class Counsel, related to this action, including reasonable time spent handling communications from Class members. *Id.* at ¶ 28(b)(ii).

### B. THE SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* "For in

such cases, 'the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id*. (changes in original).

Courts in the Fourth Circuit have recognized "there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, *10 (E.D. Va. 2009). "There is a 'strong presumption in favor of finding a settlement fair;" nevertheless, a proposed settlement must satisfy the requirements of Rule 23. *Id*.; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). "Fed. R. Civ. P. 23 enumerates the requirements for certification of a class action. The Court may certify a class only if it satisfies all the prerequisites of Rule 23(a), and the requirements of at least one subdivision of Rule 23(b)." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 496 (D. MD. 1998).

Straightforward consumer cases such as this one are routinely certified as class actions by courts in Maryland and elsewhere. *Mitchell-Tracey v. United General Title Insurance Company*, 237 F.R.D. 551 (D. Md. 2006) (certifying two consumer classes against title insurance underwriter for agents' overcharges); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D.Md. 1998) (certifying consumer class action against loan servicer).

1. **THE FED. R. CIV. P. 23(a) REQUIREMENTS ARE SATISFIED.**

Rule 23(a) provides "Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so

numerous that joinder of all members is impracticable [i.e. numerosity]; (2) there are questions of law or fact common to the class [i.e. commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [i.e. typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [i.e. adequacy of representation]."

The proposed class satisfies the Fed. R. Civ. P. 23(a) prerequisites. Each prerequisite is discussed below.

### i. Numerosity.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability refers only to difficulty, not impossibility." *Peoples*, 179 F.R.D. at 497. "[G]enerally, courts find classes of at least 40 members sufficiently large to satisfy the [numerosity] requirement." *Id*.

The numerosity requirement is easily met in this case since Defendant estimates that the class equals approximately 152 persons.

Plaintiffs' claim the Defendant violated the MCDCA and MCPA by collecting, or attempting to collects, debts on behalf of another without the required collection agency license under MCALA.   Defendant denies liability.

Joinder of all 152 approximate class members would be impracticable.

### ii. Commonality.

"Rule 23(a)(2) requires that the court find that 'there are questions of law or fact common to the class.'" *Central Wesleyan College v. W.R. Grace & Co*., 143 F.R.D. 628, 636 (D. S.C. 1992). "Commonality [however] does not require class members to share all issues in the suit, but simply a single common issue. Thus, factual differences among the

class members' cases will not preclude certification if the class members share the same legal theory." *Peoples*, 179 F.R.D. at 498. *See also* C. Wright and A. Miller, *Federal Practice and Procedures*, §1763 at 12681 (West 1994); *Arrington v. Colleen, Inc.*, 2001 WL 34117734, *3 (D. Md. Apr. 2, 2001); *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995)(citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)). "*Thus, factual differences among class members' cases will not preclude certification if the class members share the same legal theory*." *Peoples*, 179 F.R.D. at 498 (*citing Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir. 1981), *vacated on other grounds,* 457 U.S. 1128 (1982)) (emphasis added).

The commonality requirement is met here. Plaintiffs' claims and the claims of the proposed Class members are factually and legally identical. As discussed above, the central issue in this case is whether Defendant improperly collected upon or attempted to collect from the Class Members while unlicensed as a collection agency as required by MCALA. Plaintiffs and the proposed Class members' claims stem from the same alleged conduct – debt collection activities against them. Class certification would result in practical and efficient case management.

### iii. Typicality.

"The typicality requirement goes to the heart of the representative parties' ability to represent the class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Kloth*, 436 F.3d 461, 466 (4th Cir. 2006). Typicality requires "the claims or defenses of the class representative typify those of the class as a whole." *Peoples*, 179 F.R.D. at 498. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff[s], so

go the claims of the class.'" *Deiter*, 436 F.3d at 466. "The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Id*.

Here, like commonality, the typicality requirement is plainly satisfied. As explained, Plaintiffs' claims and the claims of the proposed Class members stem from the same alleged conduct, and are legally and factually identical. Plaintiffs' claims are, therefore, not only typical of the claims of the Class, they are the same. *See Kohl v. Assoc. of Trial Lawyers of America*, 183 F.R.D. 475, 484 (D. Md. 1998); *Benway*, 239 F.R.D. at 424.

### iv. Adequacy of Representation.

The adequacy of representation requirement "focuses on class counsel's competence and experience and on the degree of antagonism between the class and the representative." *Peoples*, 179 F.R.D. at 499. The purpose of the requirement is "to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prod., Inc.*, 521 U.S. at 625. "A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Plaintiffs in this case have no claim or interest that conflicts with those of the Class. Named Plaintiffs has followed this case diligently, participated in complex discovery during COVID-19 and were deposed twice by Order of the Court, personally communicated with and conferred with Class Counsel, and participated in the mediation session that was held on their behalf and are prepared to answer further discovery and testify at trial if this matter is not settled.

Appointment of class counsel is now governed by Rule 23(g), which provides:

(1) *Appointing Class Counsel.*

>(A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.
>
>(B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
>
>(C) In appointing class counsel, the court
>
>>(i) must consider: the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the
>>type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class;
>>(ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>>(iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
>>(iv) may make further orders in connection with the appointment.

*Id.*

Consideration of each the mandatory factors warrants appointment of the Plaintiffs' counsel as class counsel in this matter. The claims were identified because counsels' practices are devoted to advocating for and representing consumers. Counsel stay well educated on current issues in the consumer law area by participating in legislative matters, litigating cases as well as speaking on the law related to the claims. Identifying Plaintiffs' claims was possible because of counsel's active involvement in the consumer law issues. Prior to and since filing this lawsuit, Plaintiffs' counsel has

10

investigated the Defendant and her practices. Plaintiffs' counsel has and will commit sufficient resources to prosecute the case if it is not otherwise resolved.

Plaintiffs' counsel are very experienced in class actions as well as consumer law. Plaintiffs' counsel have previously been found to be adequate class counsel and have served as lead class counsel in numerous cases involving consumer frauds and other legal violations. As set forth in the attached Declaration of Counsel, **Exhibit 2**, Phillip Robinson, each have served as class counsel in many class actions, including cases in this Court. A list of Class Counsels' class action cases are set forth in the accompanying Declaration, **Exhibit 2**.

Finally, Plaintiffs have no interests antagonistic to the Class members. Plaintiffs' claims are identical to the Class members' claims and there is no potential for conflicting interests in this action.

### C. THE FED. R. CIV. P. 23(b)(3) REQUIREMENTS ARE SATISFIED.

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (b)(2), or (b)(3)." *Amchem Prods., Inc.*, 521 U.S. at 614.

The Parties here seek certification pursuant to Rule 23(b)(3). Under (b)(3), the plaintiff must demonstrate that the common questions of law or fact predominate over questions effecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. These criteria are referred to as predominance and superiority. Factors relevant to an examination of those criteria include the following: (1) the interest of the individual members in controlling the prosecution or defense of their case; (2) the extent and nature of other litigation already commenced

involving the parties; (3) the desirability of concentrating the claims in the particular forum; (4) difficulties likely to be encountered in management of the case.

This case meets both tests. The common questions of law and fact predominate over any individual questions of class members. The Defendant took the same action (or inactions) with respect to the Plaintiffs and class members. What is at issue is whether the Defendant violated any consumer protection laws when she collected or sought to collect consumer debts while unlicensed as a collection agency pursuant to MCALA. The Defendant's actions (or inactions) predominate and parties submit there are no individual questions since what is at issue is the Defendant's efforts to collect upon or attempt to collect from consumers on behalf of Stonegate and Grand Bel while not licensed as a collection agency.

The class action here also meets the superiority test. Many of the affected individuals may not be in a position to enforce their rights through a lengthy and costly individual suit. Without a class action, the persons who have claims may never be able to obtain relief. A class action is appropriate and a superior method of providing relief to the class members.

Rule 23(e) provides a class action shall be "compromised only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re *Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991). "When a settlement agreement has been the subject of arms-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised

by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055 (E.D. Va. 2009).

However, "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"Courts have identified several factors . . . which merit consideration. These may be broken down into two major categories: those which go to 'fairness' and those which go to 'adequacy' of a settlement." In re *Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315 (D. Md. 1979); *see also* In re *Jiffy Lube Securities Litigation*, 927 F.2d at 158-59.

### 1.     The Proposed Settlement Satisfies the Fairness Factors.

To meet the fairness factors, the Court must determine "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel. . . ." *In re Jiffy Lube Securities Litigation*, 927 F.2d at 158-59; *Kovacs v. Ernst & Young*, 927 F.2d 155, 158 (4th Cir. 1991).

The Parties negotiated the proposed settlement at arms-length after careful and extended consideration of the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, after extended discovery, after multiple exchanges of demands and counteroffers, and after an all-day mediation session before Judge Simms. Significant to the settlement was its comparison to a prior suit against the Defendant in the Circuit Court for Montgomery County—i.e. the *Martinez* action.

13

The proposed settlement was not the product of fraud or collusion. The Parties have been represented by counsel experienced in consumer and class litigation. Class Counsel is a "seasoned attorney" and has determined this settlement is in the Class members' best interest. Class Counsel's qualifications are further set forth in **Exhibit 2**. Counsel for the Defendant also has a practice in similar litigation and substantial experience with the issues raised by the Plaintiffs' claims and allegations.

### 2. The Proposed Settlement Satisfies the Adequacy Factors.

To determine if the settlement is adequate, the Court must consider "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*. at 159. While the fifth factor is inapplicable at this stage, application of the other relevant factors shows the proposed settlement provides adequate relief to the class members.

Protracted discovery, motions practice and a trial in this case would be lengthy and expensive and early settlement will avoid significant fees and costs to each side and avoid delay of any relief to the class.

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, and pursuant to Fed. R. Civ. P. 23(b)(3), the Parties respectfully request that the Court preliminarily certify the proposed

class and preliminarily approve the proposed settlement by entering the proposed Preliminary Approval Order attached as **Exhibit 2**, and for such other relief as this Court deems proper.

Respectfully Submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
Fed. Bar Number 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
phillip@marylandconsumer.com

*Counsel for the Plaintiffs and Class*

*/s/ Leslie Paul Machado (with permission)*
Leslie Paul Machado (Bar No. 14952)
O'Hagan Meyer PLLC
2560 Huntington Avenue, Suite 204
Alexandria, VA 22203
(703) 775-8607 (phone)
lmachado@ohaganmeyer.com

*Counsel for Defendant Barbara Shea*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing and attachments was sent to all parties and counsel of record when this motion was filed with the Court's ECF service.

/s/ Phillip Robinson
Phillip Robinson